UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
AT ASHLAND

**CIVIL CASE NO. 14-42-WOB-CJS**

**TINA RENE SHANKS**                                                                                **PLAINTIFF**

**VS.**                             **REPORT AND RECOMMENDATION**

**CAROLYN W. COLVIN, Acting**
**Commissioner of Social Security**                                          **DEFENDANT**

\* \* \* \* \* \* \* \* \* \*

Plaintiff Tina Rene Shanks brings this action under 42 U.S.C. § 405(g) challenging Defendant Commissioner's final decision denying her application for disability insurance benefits under the Social Security Act. This matter has been referred to the undersigned for preparation of Report and Recommendation under 28 U.S.C. § 636(b)(1)(B). At issue is whether the Administrative Law Judge (ALJ) erred in finding Plaintiff "not disabled" and therefore not entitled to benefits. After a thorough review of the administrative record, for the reasons explained below it will be **recommended** that Plaintiff's Motion for Summary Judgment (R. 14) be **denied**, and the Commissioner's Motion for Summary Judgment (R. 15) be **granted**.

**I.**     **STANDARD OF REVIEW AND THE ADMINISTRATIVE PROCESS**

In reviewing the decision of an ALJ in social security cases, the only issues before the reviewing court are whether the ALJ applied the correct legal standards and whether the decision is supported by substantial evidence. *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009). Substantial evidence is "such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401 (*quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. *Blakley*, 581 F.3d at 406. "The substantial-evidence standard . . . presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts." *Id*. (*citing Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)). Thus, even if the evidence could also support another conclusion, the decision of an ALJ must stand if the evidence could reasonably support the conclusion reached. *Id.* (*citing Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).

In this case, Plaintiff must establish that she is disabled within the meaning of the Social Security Act in order to qualify for benefits. 42 U.S.C. § 423(a)(1). The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

The Social Security Act requires the Commissioner to follow a five-step analysis when making a determination on a claim of disability. *Vance v. Comm'r of Soc. Sec.*, 260 F. App'x 801, 803-04 (6th Cir. 2008) (*citing Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990)); *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). First, a claimant must demonstrate that she is not currently engaged in "substantial gainful activity." *Vance*, 260 F. App'x at 803 (*citing* 20 C.F.R. §§ 404.1520(b), 416.920(b)). Second, if the claimant is not engaged in substantial gainful activity, she must demonstrate that she suffers from a severe impairment. *Id*. at 803-04. "A 'severe

impairment' is one which 'significantly limits . . . physical or mental ability to do basic work activities.'" *Id*. at 804 (*citing* 20 C.F.R. §§ 404.1520(c), 416.920(c)). Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets or equals a listed impairment located at 20 C.F.R. part 404, subpart P, appendix 1, then the claimant is presumed disabled regardless of age, education or work experience. *Id*. (*citing* 20 C.F.R. §§ 404.1520(d), 416.920(d)). Fourth, the claimant is not disabled if her impairment(s) does not prevent her from doing her past relevant work. *Id*. Lastly, even if the claimant cannot perform her past relevant work, she is not disabled if she can perform other work that exists in the national economy. *Id*. (*citing Abbott*, 905 F.2d at 923). Throughout this process, the claimant carries the overall burden of establishing that she is disabled, but the Commissioner bears the burden of establishing that the claimant can perform other work existing in the national economy. *Id*. (*quoting Wilson v. Comm'r of Soc. Sec*., 378 F.3d 541, 548 (6th Cir. 2004)).

II.     **FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

Plaintiff was born on November 25, 1973, and was 36 years old when her alleged disability began. (Administrative Record (A.R. 21)). Plaintiff has a ninth-grade education and at the time of her disability hearing was trying to obtain her GED, although she has difficulty reading. (*Id.* at 40-42). Plaintiff has past work experience as a fast food cook, fast food shift supervisor, fast food worker, assembly line worker/product packager, and a gas station cashier/stocker. (*Id.* at 42-44; 270-74). Plaintiff claims disability based on diabetes, COPD, asthma, emphysema, kidney stones, and a strained rotator cuff. (*Id.* at 215).

3

On March 9, 2011, Plaintiff filed applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"), with an alleged disability onset date of November 8, 2010. (*Id.* at 176-182; 183-89). These claims were initially denied on August 8, 2011 and again upon reconsideration on October 27, 2011. (*Id.* at 68-87; 90-109). Thereafter, at Plaintiff's request, a hearing was held before Administrative Law Judge Michele Kelley on October 4, 2012. (*Id.* at 12). At the hearing, the ALJ heard testimony from Plaintiff and from an impartial vocational expert (VE). (*Id.* at 31-65). After receiving testimony and reviewing the record, the ALJ issued a written decision on November 2, 2012, finding Plaintiff was not disabled within the meaning of the Social Security Act. (*Id.* at 12-23).

The ALJ used the five-step sequential evaluation process to determine that Plaintiff was not disabled. (*Id.* at 13-14). *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful employment since November 8, 2010–the alleged onset date of her disability.[1] (A.R. 14). At step two, the ALJ determined that Plaintiff had the following severe impairments: disc bulge at L4-5; right ulnar neuropathy; right knee sprain and bursitis; left shoulder tendinosis and tendinopathy; non-insulin dependent diabetes mellitus, type II, with neuoropathy; scarring from corneal dystrophy bilaterally; shortness of breath; obesity; and depressive disorder (NOS) with anxiety under 20 C.F.R. §§ 404.1520(c) and 416.920(c). (*Id.*).

At step three, the analyzed Plaintiff's impairments individually and in combination, and found that Plaintiff did not have an impairment that meets or equals the level of severity set forth in

---

[1] The ALJ found Plaintiff met the insured status requirements of the Social Security Act through December 31, 2015. (A.R. 14).

4

any of the Listings of Impairments under the applicable Federal Regulation. (*Id.* at 16-18). At step four, after careful consideration of the entire record, the ALJ determined that the Plaintiff had the residual functional capacity for a limited range of light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), with the following limitations:

> [Plaintiff] can only occasionally reach overhead with her left upper extremity, climb ramps and stairs, kneel, crouch, and crawl; she can never climb ladders, ropes, and scaffolds; and she must avoid concentrated exposure to fumes, dusts, gases, odors, and extreme cold and heat. Mentally, she can perform simple, routine, repetitive tasks but can tolerate only few workplace changes.

(*Id.* at 18).

At the hearing, the ALJ heard testimony from an impartial vocational expert who stated that based on the RFC provided by the ALJ, Plaintiff could not perform any of her past relevant work. (*Id.* at 59). The ALJ proceeded to step five, and based on the testimony of the vocational expert and considering the claimant's age, education, work experience and RFC recited above, the ALJ found that there were other jobs that exist in significant numbers in the national economy that the Plaintiff would be able to perform, including product packager, production inspector, and laundry sorter and packager. (*Id.* at 22). Accordingly, the ALJ concluded that the Plaintiff was not "disabled" for Social Security purposes. (*Id.* at 23).

Plaintiff appealed the ALJ's decision to the Social Security Appeals Council, and on January 31, 2014, the Appeals Council denied Plaintiff's request for review, rendering the ALJ's November 2, 2012, decision denying Plaintiff benefits the final decision of the Commissioner. (*Id.* at 1). On March 14, 2014, having exhausted her administrative remedies, Plaintiff timely filed a Complaint asserting that the ALJ erred as a matter of law in failing to find Plaintiff disabled. (R. 1).

Plaintiff has filed a Motion for Summary Judgment, arguing that the ALJ erred in her assessment of Plaintiff's RFC. (R. 14). Specifically, Plaintiff contends that the ALJ failed to give adequate reasons for discounting the opinions of Plaintiff's treating psychiatrist, Dr. Welch. (R. 14, at 3). Plaintiff also alleges the ALJ's conclusion that she was not fully credible is not supported by substantial evidence. (*Id.* at 9). Finally, Plaintiff asserts the Commissioner has failed to meet her burden at step 5 of the sequential analysis. (*Id.* at 6). Each of these arguments will be addressed in turn.

### III. ANALYSIS

#### A. The ALJ did not err in her decision to give no weight to Dr. Welch's opinion.

Plaintiff contends that the ALJ failed to articulate "good reasons" for her decision to afford no weight to the opinion of her treating psychiatrist, Dr. Welch.[2] (R. 14, at 3-6). "Generally, the opinions of treating physicians are given substantial, if not controlling, deference." *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004) (*citing* 20 C.F.R. § 404.1527(d)(2)). However, treating physicians' opinions do not automatically bind the ALJ: these opinions are only entitled to controlling weight when they are supported by objective medical evidence and consistent with other substantial evidence in the record, *Wilson*, 378 F.3d at 544, and not contradicted by substantial evidence to the contrary. *Loy v. Sec'y of Health & Human Servs.*, 901 F.2d 1306, 1308-09 (6th Cir. 1990). If the ALJ finds the treating physician's opinion fails to meet these conditions, she may discredit that opinion, so long as she gives good reasons for doing so. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *see also Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th

---

[2] Plaintiff in her briefing also refers to the opinions of a "Dr. Potter." (R. 14, at 5). However, the Court recognizes that this error is likely typographical, as there is no treating physician named Dr. Potter in the record.

6

Cir. 2013). These reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Gayheart*, 710 F.3d at 376 (*quoting* Soc. Sec. Rul. No. 96-2p, 1996 WL 374188, at *5 (Soc. Sec. Admin. July 2, 1996)).

However, the Sixth Circuit has explained that "a treating physician's opinion is only entitled to such . . . deference when it is a medical opinion." *Curler v. Comm'r of Soc. Sec.*, 561 F. App'x 464, 471 (6th Cir. 2014) (*quoting Turner v. Comm'r of Soc. Sec.*, 381 F. App'x 488, 492-93 (6th Cir. 2010)). "If the treating physician instead submits an opinion on an issue reserved to the Commissioner–such as whether the claimant is disabled, unable to work, the claimant's RFC, or the application of vocational factors–[the ALJ's] decision need only 'explain the consideration given to the treating source's opinion.'" *Id.* (*quoting Johnson v. Comm'r of Soc. Sec.*, 535 F. App'x 498, 505 (6th Cir. 2013) (*quoting* SSR 96-5p)). The ALJ is not required to give such an opinion any particular weight. *Id.* (*citing Turner*, 381 F. App'x at 493).

Here, Plaintiff contends that the ALJ violated the treating physician rule when she failed to provide "good reasons" for her decision to afford the opinions of Dr. Welch no weight. Plaintiff submitted a mental RFC questionnaire completed on March 2, 2012, by Elizabeth Evans, RNC, and signed by Dr. Welch. The assessment provided opinions on what Plaintiff could still do despite her impairments. (A.R. 709-11). Ms. Evans opined that Plaintiff's ability to understand, remember, and carry out instructions was affected by her impairments. (*Id.* at 709). Ms. Evans checked boxes indicating Plaintiff had moderate limitations in her ability to carry out short, simple instructions and make judgments on simple work-related decisions; marked limitations in her ability to remember short, simple instructions; and extreme limitations in her ability to understand, remember, and carry

7

out detailed instructions. (*Id.*). Ms. Evans further opined that Plaintiff's ability to respond appropriately to supervision, co-workers, and work pressures in a work setting were affected by her impairments. (*Id.* at 710). Again, Ms. Evans checked boxes indicating Plaintiff had slight restrictions in her ability to interact with the public; moderate restrictions in her ability to interact appropriately with supervisors, co-workers, and to respond appropriately to changes in a routine work setting; and extreme limitations in her ability to respond appropriately to work pressures in a usual work setting. (*Id.*).

The ALJ gave no weight to these restrictions offered by Ms. Evans and signed by Dr. Welch. (*Id.* at 20). The ALJ explained:

> I have given no weight to Dr. Welch's opinion. Dr. Welch is the claimant's treating psychiatrist and he opined that the claimant was severely mentally limited. He provided very few mental health treatment records and no explanation for his opinion (Exhibit 13F). In fact, a treatment note from Pathways in March 2012, reveals the claimant was pleasant, neatly groomed, and admittedly "doing okay" (Exhibit 21F, page 7). The claimant was focused on having her disability questionnaire completed and the therapist stated she completed the questionnaire as requested. The therapist did not consider the claimant's condition severe enough at that time to schedule the next visit any sooner than 4 months later (Exhibit 21, page 7). These records are not consistent with Dr. Welch's opinion that the claimant had marked (severely limited but not precluded) ability to understand and remember, short, simple instructions; and extremely (no useful ability to function) limited in the ability to understand, remember, and carryout detailed instructions; and respond appropriately to work pressures in a usual work setting (Exhibit 13F).

(A.R. 32).

The ALJ's findings are supported by substantial evidence in the record and are sufficiently specific to make clear the weight she gave to Dr. Welch's medical opinion and the reasons for that

weight. Citing treatment records and treatment notes showing that Plaintiff's mental impairments were not as severe as the Dr. Welch opined, the ALJ concluded that Dr. Welch's medical opinion was inconsistent with evidence in the record. (A.R. 20-21, 709-11, 837). The ALJ did not find Ms. Evan's few written lines listing "symptoms of depression & anxiety that currently include distractability, irritability, memory impairment, exaggerated feelings/expression" supported by enough objective criteria and documentation. Notably, the opinions were not supported by records of Plaintiff's appointments with Dr. Welch. Indeed, Dr. Welch was not descriptive of Plaintiff's mental status in the only notes he authored on record. (*Id.* at 635-41, 838-40). The ALJ further noted that Plaintiff was seen by Dr. Welch for medication management, but not for evaluation. (*Id.* at 22).

As the Commissioner points out, Plaintiff's treatment notes with Nurse Evans do not support Dr. Welch's opinion either. On the day that Ms. Evans authored the opinion of Dr. Welch, which indicated marked and extreme mental limitations, Plaintiff was described as "doing okay" with a pleasant expression. (*Id.* at 837). Moreover, the Plaintiff was not scheduled for her next visit for four months, a length of time inconsistent with the severity of her alleged mental limitations. (*Id.*). In August 2011, Ms. Evans described Plaintiff's presentation as "friendly, cooperative, alert, attentive, and focused with good eye contact, normal speech, and coherent thoughts." (*Id.* at 630). Notes from the same month describe Plaintiff as having "average or above average functioning." (*Id.* at 629). In a September 2012 evaluation, Nurse Evans again described Plaintiff as having "[a]verage or above average functioning." (*Id.* at 835).

Thus, the ALJ rejected Dr. Welch's opinion as unsupported and departing from the evidence of record. *See* 20 C.F.R. § 416.927(c)(4) ("the more consistent an opinion is with the record as a

9

whole, the more weight we will give that opinion."); *see also Loy v. Sec'y of Health & Human Servs.*, 901 F.2d 1306, 1308-09 (6th Cir. 1990) (ALJ was justified in rejecting the treating physician's opinion where there was substantial evidence to the contrary in the record). Moreover, opinions on issues reserved to the Commissioner are never entitled to controlling weight. SSR 96-5p. Here, the limitations assessed by Ms. Evans and signed by Dr. Welch were merely their opinions of Plaintiff's mental RFC, and were therefore properly discounted by the ALJ as an opinion on an issue reserved to the Commissioner. *Turner v. Comm'r of Soc. Sec.*, 381 F. App'x 488, 493 (6th Cir. 2010). Notably, the information provided in the questionnaire did not provide clinical findings to support the opinions. *See, e.g., Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001). "[An] ALJ 'is not bound by conclusory statements of doctors, particularly where they are unsupported by detailed objective criteria and documentation.'" *Id.* (*quoting King v. Heckler*, 742 F.2d 968, 973 (6th Cir. 1984)); *see also Osier v. Astrue*, 2:10-CV-00044, 2011 WL 2670578, at *19 (M.D. Tenn. July 8, 2011) (doubting the deference given "a physician's opinion provided for purposes of litigation by means of checking boxes and filling in blanks . . . where [ ] the physician did not even attempt to support his opinions with reference to the medical record or his own treatment notes").

As explained above, the Court does not resolve conflicts in the evidence of assessing questions of [physicians'] credibility. *See Howard v. Colvin*, No. 5:13-cv-304-REW, 2015 WL 859290, at *6 (E.D. Ky. Feb. 27, 2015) (*citing Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007)). Instead, the Court engages in a review of the ALJ's findings to determine if substantial evidence supports her factual conclusions. (*Id.*). If the ALJ's decision is supported by substantial evidence, the reversal would not be warranted even if substantial evidence would also support the opposite conclusion. *Id.* at *3 (*citing Warner*, 375 F.3d at 390). Here, as explained above, the

10

ALJ's decision not to give Dr. Welch's opinion significant weight was supported by substantial evidence.

In sum, the lack of supporting medical evidence and the inconsistency of Dr. Welch's assessment with the record provides substantial support for the ALJ's decision to reject Dr. Welch's opinion of extreme limitations. The ALJ's proffered reasons for not according controlling weight to Dr. Welch's assessment's satisfy the "good reason" requirement contained in 20 C.F.R. §§ 404.1527 and 410.927. *See Francis v. Comm'r Soc. Sec. Admin.*, 414 F. App'x 802, 804-05 (6th Cir. 2011) (finding ALJ's decision to give no weight to opinion of treating source not error where ALJ cited opinion's inconsistency with objective medical evidence, conservative treatment, daily activities, and assessment of other physicians). Accordingly, the ALJ's decision to give Dr. Welch's opinion no weight is supported by substantial evidence.

      **B.**      **The ALJ did not err in her consideration of Plaintiff's credibility.**

Plaintiff argues the ALJ failed to properly evaluate her credibility as to her disability when she concluded that "the [Plaintiff] is not fully credible" regarding the extent of her pain and limitations in her back, right knee, and left shoulder. (R. 14-1, at 9). Plaintiff further argues that the ALJ's credibility determination is not supported by substantial evidence, but rather was solely based on a selective review of the record. (*Id.*).

Although relevant to the RFC assessment, a claimant's description of his or her symptoms is not enough, on its own, to establish the existence of physical impairments or disability. Soc Sec. Rul. 96-7p, 1996 WL 374186, at *2 (July 2, 1996); Soc. Sec. Rul. 96-4p, 1996 WL 374187, at *2 (July 2, 1996). When evaluating a claimant's symptoms, the ALJ must determine whether there is an underlying medically determinable impairment that could reasonably be expected to produce the

alleged symptoms. (*Id.*). Once that is established, the ALJ must "evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities." Soc. Sec. Rul. 96-7p, 1996 WL 374186, at *2. "[A]n ALJ is not required to accept a claimant's subjective complaints and may properly consider the credibility of a claimant when making a determination of disability." *Jones v. Comm'r of Soc. Sec.,* 336 F.3d 469, 475-76 (6th Cir. 2003) (*citing Walters v. Comm'r of Soc. Sec.,* 127 F.3d 525, 531 (6th Cir. 1997)).

When the claimant's description of her symptoms is not supported by objective medical evidence, the ALJ must assess the credibility of the claimant's statements based on the entire case record, including medical and laboratory findings, claimant's statements, information provided by treating or examining physicians about how the symptoms affect the claimant, and any other relevant evidence. (*Id.*). The ALJ may also consider the claimant's daily activities; the location, duration, frequency, and intensity of the claimant's symptoms; factors that precipitate and aggravate the symptoms; and the type, dosage, effectiveness and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms. (*Id.* at *3). Credibility determinations based solely on intangible or intuitive notion are impermissible. *Rogers v. Comm'r of Soc. Sec.*, 586 F.3d 234, 247 (6th Cir. 2007).

Despite Plaintiff's arguments, the record reveals the ALJ properly engaged in the two-part test for evaluating her symptoms of back, neck, shoulder, and wrist pain. First, the ALJ found that Plaintiff had physically medically determinable impairments that could reasonably be expected to cause some of her alleged symptoms. She then proceeded to compare Plaintiff's testimony about

12

the severity and persistence of her symptoms against the objective medical proof, ultimately finding that the two were inconsistent. (A.R.19-21).

Although the Plaintiff contends that the ALJ's credibility finding was based on a "selective review of the record" (R. 14-1, at 9), the record reveals that the ALJ thoroughly considered Plaintiff's subjective complaints, ultimately rejecting them as not credible. The ALJ explained in some detail the inconsistencies between Plaintiff's testimony and the objective medical evidence relating to her disabling impairments. The ALJ noted that the clinical findings regarding Plaintiff's back, right knee and her shoulder were mild. (A.R. 19). The ALJ noted Plaintiff's complaints of severe back pain—which she first reported in 2012, more than a year after her onset application date. (*Id.* at 653-54). Plaintiff testified her pain was caused by "three slipped discs"; however, an MRI of Plaintiff's back showed only a broad-based disc bulge at one level with borderline stenosis of the central canal and mild foraminal stenosis, without herniation. (*Id.* at 750-51). The ALJ considered Plaintiff's testimony that she had injured her left knee in 2011, received injections to the left knee, and wore a brace on that knee to the hearing. (*Id.* at 47-48). However, the ALJ noted that her medical records showed that the injury was to the right knee. (*Id.* at 409-12, 574, 763, 771-72, 774). Plaintiff also testified at her hearing that she suffered from kidney stones and had been trying to pass a kidney stone for the previous five years. (*Id.* at 45-46). But again, the medical records did not support her testimony. Indeed, the medical records show that at the time of the hearing, only eight months had elapsed since the first record of the condition. (*Id.* at 655).

The ALJ further supported her conclusion with evidence that the claimant's activities of daily life undermined her alleged disabling pain. In particular, Plaintiff complained of a limited ability to use her hands allegedly stemming from carpal tunnel syndrome, which was unsupported by any

13

diagnosis of record. (*Id.* at 46). However, Plaintiff inconsistently testified that her hobbies included playing guitar and mandolin. (*Id.* at 571, 628).

Inconsistencies in the evidence can be considered in assessing credibility. *See* SSR 96-7p, 1996 WL 374186, at *5 ("one strong indication of the credibility of an individual's statements is their consistency, both internally and with other information in the case record."). Thus, the ALJ validly questioned Plaintiff's credibility, given numerous unsupported claims about her back, neck, shoulder, and wrist pain. *See Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997) ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among the medical reports, claimant's testimony, and other evidence."). Review of the record reveals the ALJ did not err in concluding that Plaintiff's complaints of disabling impairments were inconsistent with the objective medical evidence. The ALJ explained her reasons for making an adverse credibility assessment and incorporated the limitations she found to be justified in assigning an RFC for a limited range of light work. Accordingly, there is no error in this regard.

**C.     The ALJ's hypothetical question to the VE accurately described Plaintiff's limitations.**

Plaintiff argues that the ALJ's decision should be overturned because the hypothetical question to the vocational expert incorporated the ALJ's erroneous RFC assessment and therefore was inaccurate or incomplete. (R. 14-1, at 6). Plaintiff claims the ALJ erred by not including limitations for Dr. Atcher's opinion that Plaintiff could not handle normal work stress in a usual work environment in his hypothetical question to the VE. (*Id.*). Plaintiff notes that Dr. Welch's RFC assessment included the same limitation. Thus, Plaintiff argues the ALJ could not rely on the VE's testimony as substantial evidence at step 5 because it did not address whether the

14

recommended jobs would be adversely affected by an individual with this limitation. (*Id.*). Plaintiff further argues that the hypothetical failed to include the limitations offered by Brenda Pittman, ARNP. (*Id.*).

"[F]or a vocational expert's testimony in response to a hypothetical question to serve as substantial evidence that a claimant can perform other work, the question must accurately portray a claimant's physical and mental impairments." *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 516 (6th Cir. 2010). In a hypothetical question, an ALJ is required to incorporate only those limitations he finds credible and supported by the record. *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993). However, "the ALJ must include in the question an accurate calculation of the claimant's residual functional capacity–i.e., a description of what the claimant can and cannot do." *Cooper v. Comm'r of Soc. Sec.*, 217 F. App'x 450, 453 (6th Cir. 2007) (quotations omitted). A statement of the claimant's abilities and limitations, however, need not include an enumeration of every diagnosis or impairment. *Howard v. Comm' of Soc. Sec.*, 276 F. 3d 235, 239 (6th Cir. 2002). Instead, an ALJ need only include those restrictions which he has deemed credible. *Parks v. Soc. Sec. Admin.*, 413 F. App'x 856, 865 (6th Cir. 2011); *Stanley v. Sec'y of Health & Human Servs.*, 39 F.3d 115, 118-19 (6th Cir. 1994).

At the administrative hearing, the ALJ posed a question to the VE describing a hypothetical person of Plaintiff's age and educational level, with the same RFC as the ALJ ultimately determined Plaintiff had the ability to perform. (A.R. 60). In response to this hypothetical, the VE testified that a person with such limitations would be able to perform jobs in the national economy, namely the representative jobs of product packager, production inspector, and laundry sorter and packager. (*Id.* at 61). Plaintiff complains that the hypothetical question posed by the ALJ was incomplete because

it did not include Dr. Atcher and Dr. Welch's opinions that Plaintiff would not respond well to the usual pressures of the work environment. (R. 14-1, at 7). However, the ALJ accounted for these limitations in the RFC by limiting her to "simple, routine, and repetitive tasks," and noting that she could "tolerate only a few workplace changes." (A.R. 18). Thus, Plaintiff's complaint lacks merit.

Plaintiff further argues that the ALJ's hypothetical was incomplete because it did not include the physical limitations offered by ARNP Brenda Pittman. (R. 14-1, at 7). However, as noted above, in forming a hypothetical question an ALJ need only incorporate those limitations she finds to be credible. *See Casey*, 987 F.2d at 1235. Here, the ALJ engaged in a thorough analysis of Ms. Pittman's opinions at the fourth step of the sequential analysis. On February 24, 2012, Ms. Pittman completed an RFC questionnaire in which she opined that Plaintiff could lift and carry less than 10 pounds; stand and walk 1 hour total in an 8-hour work day and for 20 minutes at a time; sit 1 hour total in an 8-hour work day for 15 minutes at a time; and would need a sit-and-stand option due to her back pain. (A.R. 647-48). The ALJ rejected the assessment, explaining it was inconsistent with the overall objective medical evidence of record and unsupported by Plaintiff's history of mild treatment. The ALJ explained Plaintiff's "physical conditions are, at most, mild; she has not had EMG or NCV studies; and she has not had any surgeries." (*Id.* at 21).

Further, the ALJ noted Ms. Pittman was not an acceptable medical source. (*Id.* at 21). While a nurse practitioner is not an "acceptable medical source" under 20 C.F.R. §§ 404.1513(a) and 416.913(a), a nurse practitioner is a valid "other source" under 20 C.F.R. §§ 404.1513(d)(1) and 416.913(d)(1). *See Cruse*, 502 F.3d 532, 541 (6th Cir. 2007) ("an ALJ has discretion to determine the proper weight to accord opinions from 'other sources' such as nurse practitioners," (*citing Walters v. Comm'r of Soc. Sec.,* 127 F.3d 525, 530 (6th Cir. 1997)). Social Security Ruling 06-03p

16

indicates that opinions from "other sources" who have seen the claimant in a professional capacity should be evaluated using the applicable factors listed in 20 C.F.R. §§ 404.1527 and 416.927. This means the opinion can be weighed using factors such as the examining relationship of the source with the plaintiff, whether the opinion is consistent with other evidence, whether the source presents relevant evidence to support the opinion, and any other factors that tend to support or refute the opinion. *See* 20 C.F.R. §§ 404.1527(c), 416.927(c). Social Security Ruling 06-03p clarifies that not every factor for weighing opinion evidence will apply in every case; the evaluation of an opinion from a "non-medical source" will depend on the particular facts in each case.

Plaintiff argues that the ALJ erred in her consideration of Ms. Pittman's opinions because she did not address the length of her treating relationship with Plaintiff. Plaintiff also complains that the ALJ failed to engage in analysis of what evidence in the "overall" record was inconsistent with Ms. Pittman's opinions. (R. 14-1, at 8) (quotations in original). However, Plaintiff's complaints are without merit. The ALJ provided a thorough summary of the evidence, including opinions from both medical and non-medical sources. (A.R. 18-21). The ALJ explained her evaluation of Ms. Pittman's opinion using applicable factors for weighing the opinion of a non-medical source. (*Id.* at 21). Although treatment relationship is an applicable factor under 20 C.F.R. §§ 404.1527(c) and 416.927(c), not every factor for weighing opinion evidence is applicable in every case. SSR 06-03p. Here, the ALJ explained that the extreme limitations opined by Ms. Pittman lacked support from the objective medical evidence, and were inconsistent with the record as a whole. Moreover, Ms. Pittman's own notes show that Plaintiff's conditions were not disabling, as she regularly observed the Plaintiff walked with a normal gait and repeatedly cited normal examination of Plaintiff's extremities. (A.R. 652, 656, 660, 663-65, 667, 670, 672-75).

17

Although the Plaintiff's representative asked the VE additional hypothetical questions incorporating the limitations set forth in Ms. Pittman's RFC assessment, and the VE opined that such limitations would render such a person unable to perform any jobs, the ALJ did not ultimately find Plaintiff was so limited. (*Id.* at 63-64). Because an ALJ is permitted to rely upon vocational expert testimony in response to an accurate hypothetical, the ALJ did not err in relying on the expert's opinion to the hypothetical that contained the RFC determination of the ALJ.

Upon consideration, the hypothetical question posed to the VE was complete and supported by substantial evidence. The hypothetical question included the limitations that the ALJ, in considering the record as a whole, found credible. Given that the ALJ reasonably rejected the opinions of Ms. Pittman, she was under no obligation to include those limitations in the hypothetical question to the VE.

### IV. CONCLUSION AND RECOMMENDATION

As explained above, the ALJ's consideration of the evidence relating to Plaintiff's disability confirms the ALJ's decision was supported by substantial evidence in the record.

Accordingly, **IT IS RECOMMENDED** that:

1. the Commissioner's decision be found to be supported by substantial evidence and therefore **affirmed**;

2. Plaintiff's Motion for Summary Judgment (R. 14) be **denied**;

3. Commissioner's Motion for Summary Judgment (R. 15) be **granted**; and,

4. Judgment be entered and this matter **stricken** from the active docket of the Court.

Specific objections to this Report and Recommendation must be filed within fourteen (14) days of the date of service or further appeal is waived. See 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*,

728 F.2d 813, 815 (6th Cir. 1984), *aff'd*, 474 U.S. 140 (1985). A party must file a response to another party's objections within fourteen (14days after being served with a copy. *See* Fed. R. Civ. P. 72(b).

Dated this 31st day of August, 2015.

Signed By:
*Candace J. Smith*
United States Magistrate Judge

G:\DATA\social security\14-42 Shanks R&R.ald.final.wpd